VENABLE LLP
David E. Fink (SBN 169212)
defink@venable.com
Sharoni S. Finkelstein (SBN 271829)
ssfinkelstein@venable.com
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone:  (310) 229-9900
Facsimile:   (310) 229-9901

*Attorneys for Defendant Chrissy Teigen*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ULICES RAMALES,<br><br>        Plaintiff,<br><br>    v.<br><br>CHRISSY TEIGEN,<br><br>        Defendant. | Case No. 2:23-cv-07312-FMO (Ex)<br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:         February 1, 2024<br>Time:         10:00 a.m.<br>Courtroom: 6D<br><br>Judge:  Fernando M. Olguin<br>Action Filed:  September 5, 2023 |

# **TABLE OF CONTENTS**

I.    FAIR USE IS PROPERLY DECIDED ON A MOTION TO DISMISS .......1

II.   DEFENDANT'S USE OF THE PHOTOGRAPH IS A FAIR USE...............2

     1.    *Warhol IV* is Inapposite to the Facts of This Case..............................2

     2.    Purpose and Character of the Use Favors a Finding of Fair Use .........4

     3.    Nature of the Copyrighted Work Favors a Finding of Fair Use...........6

     4.    Amount and Substantiality of the Portion Used Favors a Finding of Fair Use ................................................................................................7

     5.    Effect of the Use on the Potential Market For or Value of the Work Favors a Finding of Fair Use ................................................................8

III.  CONCLUSION ..............................................................................................9

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*,
   143 S.Ct. 1258, 598 U.S. 508 (2023) ......................................................... *passim*

*Campbell v. Acuff-Rose*,
   510 U.S. 569, S.Ct. 1164 (1994) ................................................................. 4, 7, 8

*Cholla Ready Mix, Inc. v. Mendez*,
   382 F.3d 969 (9th Cir. 2004) ............................................................................ 6

*Dr. Seuss Enters., L.P. v. ComicMix LLC*,
   983 F.3d 443 (9th Cir. 2020) ............................................................................ 6

*Fitzgerald v. CBS Broad., Inc.*,
   491 F. Supp. 2d 177 (D. Mass. June 22, 2007) ........................................ 6, 8, 9

*Free Speech Systs., LLC v. Menzel*,
   390 F. Supp. 3d 1162 (N.D. Cal. June 18, 2019) ............................................ 1

*Google LLC v. Oracle Am., Inc.*,
   141 S.Ct. 1183 (2021) ...................................................................................... 8

*In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868
   (N.D. Cal. June 21, 2022) ................................................................................ 8

*Katz v. Google, Inc.*,
   802 F.3d 1178 (11th Cir. 2015) ....................................................................... 7

*Kelly-Brown v. Winfrey*,
   717 F.3d 295 (2d Cir. 2013) ............................................................................ 9

*Leadsinger, Inc. v. BMG Music Pub.*,
   512 F.3d 522 (9th Cir. 2008) ........................................................................ 1, 2

*Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*,
   942 F. Supp. 1265 (C.D. Cal. Jul. 22, 1996) ................................................... 7

*Nuñez v. Caribbean Int'l News Corp.*,
   235 F.3d 18 (1st Cir. 2000) .............................................................................. 7

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

*Schwartzwald v. Oath Inc.*,
  Case No. 19-cv-9938 (RA), 2020 WL 5441291 (S.D.N.Y. Sept. 10,
  2020) ................................................................................................................ 5

*Scott v. Kuhlmann*,
  746 F.2d 1377 (9th Cir. 1984) ........................................................................... 2

*Seltzer v. Green Day, Inc.*,
  725 F.3d 1170 (9th Cir. 2013) ........................................................................... 5

*Werner v. Red Blue Media Inc.*, Case No. 2:20-cv-01024-SVW-AFM,
  2021 WL 3560588 (C.D. Cal. 2021) ................................................................. 7

*Whiddon v. Buzzfeed, Inc.*,
  638 F. Supp. 3d 342 (S.D.N.Y. Oct. 31, 2022) ................................................. 1

**Statutes**

17 U.S.C. § 107 .................................................................................................. 1, 2, 4

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff's Opposition to the (second) motion to dismiss by Defendant Chrissy Teigen ("Defendant") is little more than an effort to fit a square peg into a round hole. Plaintiff recasts (and outright ignores) the facts actually alleged in the First Amended Complaint ("FAC") in an effort to fit within the framework of the Supreme Court's recent decision in the factually inapposite *Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 143 S.Ct. 1258, 598 U.S. 508 (2023) (hereafter, "*Warhol IV*"). Yet, Plaintiff ignores the plain language of the Copyright Act, which states that "the fair use of a copyrighted work, . . . for purposes such as criticism, comment, [or] news reporting, . . . *is not an infringement of copyright*." 17 U.S.C. § 107 (emphasis added). Because fair use is a *non-infringing use*, the claim for copyright infringement fails as a matter of law.

As this is Plaintiff's second failed attempt to state a claim for relief, and amendment cannot cure the defects in the FAC, Defendant respectfully asks the Court to dismiss the FAC with prejudice.

## I. FAIR USE IS PROPERLY DECIDED ON A MOTION TO DISMISS

As an initial matter, Plaintiff contends that fair use is an affirmative defense which cannot be decided on a motion to dismiss. (Dkt. 26, at 5-7.) This position is inconsistent with the caselaw cited by both Plaintiff and Defendant in their respective moving and opposing papers. For example, in *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522 (9th Cir. 2008), the Court held that "the district court's resolution of the fair use issue at the motion to dismiss stage was proper." 512 F.3d at 530. Likewise, in *Whiddon v. Buzzfeed, Inc.*, 638 F. Supp. 3d 342 (S.D.N.Y. Oct. 31, 2022), the Court held that fair use may be decided on a motion to dismiss where, as here, "the facts necessary to establish the defense are evident on the face of the complaint." 638 F. Supp. 3d at 350 (quoting *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013)). *See also Free Speech Systs., LLC v. Menzel*, 390 F. Supp. 3d

1162, 1174 (N.D. Cal. June 18, 2019) ("Though the fair use defense is a mixed question of law and fact, it may be decided on a motion to dismiss if there are no material facts in dispute.").

Plaintiff misleads in its reliance on *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) for the purported position that determination of an affirmative defense such as fair use "is generally disfavored if raised on a motion to dismiss." (Dkt. 26, at 7)  What the Ninth Circuit *actually* stated in *Scott* is that "[o]rdinarily affirmative defenses may not be raised by motion to dismiss, . . . *but this is not true when, as here, the defense raises no disputed issues of fact*." *Id.* (emphasis added).

Here, because all facts in the FAC are accepted as true on a motion to dismiss, there are no factual disputes for purposes of the Motion. *Leadsinger*, 512 F.2d at 530.  Based on these undisputed facts, Defendant's use of the Photograph as described in the Complaint is a fair use as a matter of law.  Thus, Defendant's Motion to Dismiss is properly before the Court.

## II. DEFENDANT'S USE OF THE PHOTOGRAPH IS A FAIR USE

For the reasons described below and in Defendant's Motion to Dismiss, each of the factors set forth at 17 U.S.C. § 107 supports a finding that Defendant's use of the Photograph on her Instagram stories was a fair use and not an infringement.

### 1. *Warhol IV* is Inapposite to the Facts of This Case

As an initial matter, Plaintiff carelessly lodges a serious accusation against Defendant that she failed to comply with Rule 11 of the Federal Rules of Civil Procedure by declining to address the Supreme Court's *Warhol IV* decision. (Dkt. 26, at 8.) Although Defendant acknowledges that *Warhol IV* is an important decision on the issue it addresses, it did not alter the fair use factors of Section 107 nor "fundamentally alter[] the test for transformation" as Plaintiff opines, and its facts are not remotely analogous to those in the present case.  No discussion was warranted.

In *Warhol IV*, famous pop-artist Andy Warhol created an authorized silkscreen portrait of the musician Prince using Goldsmith's copyrighted photo as the "source photograph." 598 U.S. at 515. Warhol later created 15 other works based on Goldsmith's photo. *Id.* The Andy Warhol Foundation for the Visual Arts ("AWF") later licensed one of the unauthorized images to Condé Nast, without Goldsmith's consent, for purposes of illustrating a magazine story about Prince. *Id.* AWF sued for a declaratory judgment of noninfringement or, in the alternative, fair use. *Id.* at 521. The sole question before the Supreme Court was whether the first fair use factor—purpose and character of the use—weighs in favor of AWF's commercial licensing to Condé Nast. *Id.* at 516.

In discussing what is and is not a transformative use of a copyrighted work, the Supreme Court appropriately focused on creative derivative works such as "musical arrangements, film and stage adaptations, sequels, spinoffs, and others that 'recast, transfor[m] or adap[t]' the original." 598 U.S. at 541 (quoting 17 U.S.C. § 101). In addressing whether AWF's derivative work was transformative, the Court looked not just at a comparison between the Goldsmith photo and the Warhol portrait, but also at the subsequent use of both. *Id.* at 533-34. The Court found that Warhol's creative derivative work, *when commercially licensed to Condé Nast*, served "substantially the same purpose" as Goldsmith's original photo. *Id.* at 537-38. Accordingly, the Court concluded that the "purpose and character of the use" weighed against a finding of fair use. *Id.* at 550.

Unlike AWF in *Warhol IV*, Defendant did not create a derivative work of Plaintiff's Photograph, nor did she license the Photograph to a third-party. Rather, Defendant used the Photograph solely for the clear non-infringing purposes of providing commentary: "would live in this outfit." (Dkt. 22, at ¶ 25.) Accordingly, and for the reasons discussed further below, the purpose and character of the use weighs in favor of fair use.

### 2. *Purpose and Character of the Use Favors a Finding of Fair Use*

This first factor asks the Court to consider the purpose of the use (whether it "is for criticism, or comment, or news reporting"), and whether defendant's use of the work is "transformative" in that it "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Campbell v. Acuff-Rose,* 510 U.S. 569, 577-79, 114, S.Ct. 1164 (1994); *Warhol IV*, 598 U.S. at 527-28.[1] The purpose of the use and degree of transformation are considered together with the commercial nature of the use. *See Monge*

Criticism, comment, and news reporting are among the "purposes" listed in the preamble paragraph of Section 107, and "reflect 'the sorts of copying that courts and Congress most commonly ha[ve] found to be fair uses.'" *Warhol IV*, 598 U.S. at 528 (quoting *Campbell*, 510 U.S. at 577-78). Such uses "serv[e] a manifestly different purpose from the work itself," and ordinarily "do[] not supersede the objects of, or supplant, the work." *Id.* (quoting *Andy Warhol Foundation for Visual Arts, Inc. v. Goldsmith*, 11 F.4th 26, 37 (2d Cir. 2021)). Because the "transformative" nature of a work is a question of degree, Courts also must look to the commercial nature of the use. *Id.* at 531.

Here, the purpose of the Photograph is for it to be "used commercially and for the purpose of display and/or public distribution." (Dkt. 22, at ¶ 18.) *See also* Dkt. 26, at 3 ("Plaintiff published the Photograph for the purpose of depicting Katie Holmes and what she wears and looks like on a normal day for commercial licensure and display by third-party publishing companies."). By contrast, Defendant modified the Photograph by adding a white text box with the prominent, bold wording "would live in this outfit," and posted the same to her Instagram stories for

---

[1] In its discussion of the first fair use factor, Plaintiff mis-attributes certain quotes to the Supreme Court in *Warhol IV*, including the statement that "use of copyrighted material that merely repackages or republishes the original is unlikely to be deemed a fair use." (Dkt. 26, at 8.) This language is not found anywhere in the opinion, concurrence, or dissent of *Warhol IV*.

the purpose of providing *commentary* on that outfit from Defendant's unique perspective as a globally recognized fashion model and designer. (Dkt. 22, at ¶¶ 25-26.) This use is plainly transformative.

Next, Plaintiff insists that Defendant's commentary is insufficient to satisfy the first factor of the fair use analysis because it "does not add any criticism or comments *on the Photograph itself*." (Dkt. 26, at 10 (emphasis added).) Yet, criticism, comment, and news reporting need not be on the copyrighted work itself, nor does Plaintiff cite a single case for that position.[2] Rather, such commentary can also concern the subject matter or content of the work. *See Seltzer v. Green Day, Inc.*, 725 F.3d 1170 (9th Cir. 2013) ("[A]n allegedly infringing work is typically viewed as transformative as long as new expressive content or message is apparent," even where the work "makes few physical changes to the original or fails to comment on the original."); *Schwartzwald v. Oath Inc.*, Case No. 19-cv-9938 (RA), 2020 WL 5441291, at *4 (S.D.N.Y. Sept. 10, 2020) ("[C]opyright law imposes no requirement that a work comment on the original or its author in order to be considered transformative. . . .") (quotations and citations omitted). It is apparent from the face of Defendant's Instagram story itself that Defendant commented upon the subject matter of the Photograph by adding a large white text box with the prominent wording "would live in this outfit." (Dkt. 1, Exhibit 2.)

Finally, Plaintiff fails to establish—either in the FAC or in its Opposition—that Defendant's use of the Photograph was commercial. Unlike in *Warhol IV*, where AWF licensed its derivative works to Condé Nast for a $10,000 licensing fee, 598 U.S. at 537, Defendant did not (nor does Plaintiff allege) that Defendant made a commercial use of the Photograph. Rather, Plaintiff's sole argument is that Defendant is "a public figure who is a self-proclaimed 'globally recognized fashion

---

[2] Plaintiff quotes *Warhol IV* for the position that when "commentary has no critical bearing on the substance or style of the original composition, . . . the claim to fairness in borrowing from another's work diminishes accordingly. . . ." (Dkt. 26, at 10.) This quote was plucked from the Court's discussion of the need for some level of copying in parody, and has no bearing in the instant case. *See Warhol IV*, 598 U.S. at 530-31.

model and designer,'" that Defendant uses her Instagram account to promote her brand and business, and that she has 42.8 million followers. (Dkt. 26, at 11; Dkt. 22 at ¶¶ 21-23.) Plaintiff fails to connect the dots between Defendant's business and her use of the Photograph. The notion that posting the Photograph with commentary expressing Defendant's views on Ms. Holmes' outfit somehow resulted in "increased traffic" to Defendant's personal account is absurd on its face; and it is precisely the type of unwarranted deduction of facts that this Court need not accept. *See Cholla Ready Mix, Inc. v. Mendez*, 382 F.3d 969, 973 (9th Cir. 2004). Plaintiff's conclusions are further belied by the fact that the Photograph was posted as a transient "story" post which was automatically deleted within 24 hours—a fact which Plaintiff fails to address.

In sum, the first factor of the fair use analysis weighs heavily in favor of Defendant.

### 3. *Nature of the Copyrighted Work Favors a Finding of Fair Use*

The second fair use factor "recognizes that creative works are closer to the core of intended copyright protection than informational and functional works." *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 455 (9th Cir. 2020).

Defendant accepts as true, as she must upon a motion to dismiss, that the Photograph is entitled to at least some protection under copyright law. However, not all photographs are created equal; some are entitled to stronger protection based on the artistic decisions and direction involved in creating the photographs. Indeed, "[c]reativity for the purposes of fair use is harder to establish than threshold." *Fitzgerald v. CBS Broad., Inc.*, 491 F. Supp. 2d 177, 188 (D. Mass. June 22, 2007). *See also Warhol IV*, 598 U.S. at 527 (noting that when applying fair use provisions, "copyright's protection may be stronger where the copyrighted material . . . serves an artistic rather than a utilitarian function.") (quoting *Google LLC v. Oracle Am., Inc.*, 141 S.Ct. 1183, 1197 (2021).

For purposes of fair use, Courts regularly consider the "authorial choices"

made by photographers when evaluating the nature of the copyrighted work. *Id.* (candid photo of mobster leaving a police station was considered primarily factual). *See also Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 942 F. Supp. 1265 (C.D. Cal. Jul. 22, 1996) (overruled on other grounds) (news videos of LA riots held to be factual works even though they involved authorial choices such as framing, angle, timing, and lighting); *Nuñez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 23 (1st Cir. 2000) (noting that while "photography is an art form that requires a significant amount of skill . . . the photographs were not artistic representations . . . but instead a publicity attempt to highlight [the model's] abilities as a potential model."); *Katz v. Google, Inc.*, 802 F.3d 1178, 1183 (11th Cir. 2015) (candid photo benefitting from "fortuitous timing" was primarily factual) (cited approvingly in *Werner v. Red Blue Media Inc.*, Case No. 2:20-cv-01024-SVW-AFM, 2021 WL 3560588, at *5 (C.D. Cal. 2021)).

Like in *Katz*, the nature of Plaintiff's copyrighted work is primarily factual. This factor thus weighs in favor of fair use.

### 4. *Amount and Substantiality of the Portion Used Favors a Finding of Fair Use*

In his Opposition, Plaintiff does not dispute that Defendant's use of the entire Photograph was necessary to achieve Defendant's goal of commenting on the fashion of Ms. Holmes' outfit, nor does he challenge the transient nature of Instagram *stories*—which automatically disappear after 24 hours. Instead, Plaintiff urges that this factor is less important than the others, and should be given little weight. Although the fair use factors are not rigidly applied, "[a]ll are to be explored, and the results weighed together, in light of the purpose of copyright." *Campbell*, 510 U.S. at 578.

For the reasons described in Defendant's Motion to Dismiss, this factor weighs in favor of fair use.

### 5. *Effect of the Use on the Potential Market For or Value of the Work Favors a Finding of Fair Use*

Although Plaintiff regards this as the "single most important element of fair use" (Dkt. 26, at 16 (quotations and citations omitted)), the FAC fails to allege <u>any</u> facts related to the purported market harm, because they do not exist.

Where, as here, a use of an already-published, copyrighted work is transformative, "market substitution is at least less certain, and market harm may not be so readily inferred." *Campbell*, 510 U.S. at 591; *see also In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 881 (N.D. Cal. June 21, 2022) ("When a use is transformative and non-commercial, it is difficult to infer market harm."). Further, any potential market harm must be balanced against the "public benefits the copying will likely produce." *Google LLC*, 141 S.Ct. at 1206.

Plaintiff argues in his Opposition brief a speculative "parade of horribles" that may befall him if hypothetical individuals were permitted to post unlicensed photos on social media with their commentary. (Dkt. 26, at 18-19) Plaintiff goes so far as to posit that "A copyright holder would not be able to sell their works at all since [] 'influencers' or other individuals could steal the image from the photographer's website and claim their theft(s) to be fair once they distribute the image and create a story." *Id.* Yet, this highly exaggerated scenario (couched in inflammatory accusations of theft) is untethered to any facts alleged in the FAC. Indeed, the conduct alleged in the FAC is that Defendant posted the Photograph on a transient Instagram story to comment upon the subject of the Photograph for a non-commercial purpose. Yet, Plaintiff fails to reach the crux of this fourth factor.

Rather, this factor requires courts to consider "(i) the extent of the market harm caused by the specific infringing incident, and (ii) 'whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original." *Fitzgerald*, 491 F. Supp. 2d at 189. The first inquiry does not contemplate loss of a licensing

fee as "market harm" because, "[i]f it did, circular reasoning would resolve all fair use cases for the plaintiff. . . ." *Id.* Here, without a claim for a licensing fee, Defendant's use of the Photograph could not have harmed the market for the Photograph.

The second inquiry also militates against market harm. The accused conduct in this case is the unauthorized use of a published photo in a transient social media post for the express purpose of commenting thereon. Such conduct would not hinder or impact Plaintiff's ability to license his photographs commercially for display and/or distribution and, in fact, would serve the public benefit of permitting individuals to provide commentary, criticism, and news reporting. This factor thus weighs in favor of a finding of fair use.

In sum, each of the fair use factors weighs heavily in favor of a finding of fair use. Because all facts necessary to establish fair use are evident on the face of the FAC, the case should be dismissed in its entirety. *See Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013).

### III. CONCLUSION

Defendant respectfully requests the Court to dismiss this action without leave to amend for failure to state a claim.

DATED: January 18, 2024　　　　　　　VENABLE, LLP

By: */s/ David E. Fink*
David E. Fink
Sharoni S. Finkelstein

*Attorneys for Defendant Chrissy Teigen*